2002 UT 3

**CENTRAL FLORIDA INVESTMENTS, INC., Plaintiff and Appellee,**

v.

**PARKWEST ASSOCIATES and Beaver Creek Associates, Defendants and Appellants.**

**No. 20000558.**

Supreme Court of Utah.

Jan. 11, 2002.

Robert W. Payne, Todd M. Shaughnessy, Salt Lake City, for plaintiff.

Mark R. Gaylord, Craig H. Howe, Salt Lake City, for defendants.

WILKINS, Justice.

¶ 1 The issue on appeal is whether the trial court erred in refusing to compel arbitration.

We conclude that the parties agreed to arbitrate and that Parkwest Associates and Beaver Creek Associates did not waive their right to arbitrate. The order of the trial court is reversed.

## BACKGROUND

¶ 2 The following facts are undisputed. In June 1998 Central Florida Investments, Inc. ("CFI") entered into a real estate purchase contract with Parkwest Associates and Beaver Creek Associates (collectively, "PWA"). CFI agreed to buy approximately twenty acres of land in Summit County from PWA for $15,000,000, contingent upon, among other things, Summit County's approval of a final master plan, and the deal closing on or before December 31, 1998. The deal fell apart, allegedly because the contingencies were not satisfied by PWA. Subsequently, CFI filed an action against PWA in the district court on November 9, 1999, claiming breach of contract and breach of the covenant of good faith and fair dealing, and seeking specific performance and damages. CFI also recorded a notice of *lis pendens* against seventy-five acres of PWA property.

¶ 3 On November 12, 1999, three days after CFI filed its complaint, counsel for PWA sent counsel for CFI a letter, indicating that PWA "has consistently taken the position that the Purchase Contract terminated on December 31, 1998, due to the fact that several special contingencies . . . were not satisfied. . . ." The letter then notified CFI "that the Purchase Contract is canceled by the Buyer" because the special contingencies in the contract were not satisfied. The letter also expressed that "Paragraph 12 of Addendum No. 1 expressly provides that 'any disagreement over the terms of this agreement shall be arbitrated by parties agreed upon by both Buyer and Seller,'" and then declared that CFI's filing of the complaint and recording of the *lis pendens* were improper and constituted breach of contract. In the letter, PWA also declared its position that paragraph 12 of the addendum superseded other sections of the contract.

¶ 4 The Real Estate Purchase Agreement contains more than one provision addressing dispute resolution. Sections 15 and 16, found in the pre-printed portion of the contract, read:

[15.] DISPUTE RESOLUTION. The parties agree that any dispute or claim relating to this **Contract,** including but not limited to the disposition of the **Earnest [Mon]ey Deposit** and the breach or termination of this **Contract,** shall first be submitted to mediation in accordance with the Utah Real Estate Buyer/Seller [Med]iation Rules of the American Arbitration Association. Each party agrees to bear its own costs of mediation. Any agreement signed by the parties [purs]uant to the mediation shall be binding. If mediation fails, the procedures applicable and remedies available under this **Contract** shall apply. Nothing in this [*Sect]ion* shall prohibit the Buyer from seeking specific performance by the seller by filing a complaint with the court, serving it on the seller by means of [Sum]mons or as otherwise permitted by law, and recording a *lis pendens* with regard to the action provided that the Buyer permits the Seller to refrain from [answ]ering the complaint pending mediation. Also the parties may agree in writing to waive mediation.

[16.] DEFAULT. If Buyer defaults, Seller may elect to either retain the **Earnest Money Deposit** as liquidated damages or to return the **Earnest Money Deposit** [and] sue Buyer to enforce Seller's rights. If Seller defaults, in addition to return of the **Earnest Money Deposit,** Buyer may elect to either accept from Seller as [liquid]ated damages a sum equal to the **Earnest Money Deposit** or sue seller for specific performance and/or damages. If Buyer elects to accept the liqui[date]d damages, Seller agrees to pay the liquidated damages to buyer upon demand. Where a *Section* of this **Contract** provides a specific remedy, the parties [ ]nd that the remedy shall be exclusive regardless of rights which might otherwise be available under common law.

The parties also agreed to Addendum 1, which reads, in relevant part:

12. Any disagreement over the terms of this agreement shall be arbitrated by parties agreed upon by both Buyer and Seller.

If agreement cannot be reached within 60 days from the beginning of an arbitration process Buyer shall receive its money back and this agreement shall be null and void.

¶ 5 In response to CFI's complaint, on December 13, 1999, after PWA sent the November 12, 1999 letter to CFI, PWA filed an answer and counterclaim. The answer portion of this single document does not raise as a defense or mention arbitration. The counterclaim portion, however, raises the issue of arbitration, declaring that the addendum modified the real estate purchase contract and provides that any disagreement over terms would be arbitrated. In the background section of the counterclaim, PWA states, "Addendum No. 1 further modified the Purchase Contract by providing that any disagreement over its terms 'shall be arbitrated by parties agreed upon by both Buyer and Seller. If agreement cannot be reached within 60 days from the beginning of the arbitration process Buyer shall receive its money back and this agreement shall be null and void.' " In the background section of the counterclaim PWA further asserts that "CFI's actions [of filing the complaint and recording the *lis pendens*] are expressly barred by paragraph 12 of Addendum No. 1 [the arbitration provision]." Then, in the first cause of action raised in the counterclaim, PWA mentions the November 12 letter and asserts that "PWA further notified CFI that the filing of the Complaint was not permitted by the Purchase Contract in that section 15 was superseded by paragraph 12 of Addendum No. 1, which provides that 'any disagreement over the terms of this agreement shall be arbitrated by parties agreed upon by both Buyer and Seller' "; and that "the recording of the *lis pendens* was wrongful." PWA reincorporates these previous assertions by reference in the other causes of action, and further expressly states, "CFI, by and through its principals, promised, agreed and represented, among other things, that in the event a disagreement arose the parties would submit the matter to arbitration...." In alleging breach of the covenant of good faith and fair dealing, PWA alleges that by recording a *lis pendens* and filing a complaint, CFI breached the purchase agreement "in direct violation of section 12 of Addendum No. 1...."

¶ 6 On the same day it filed its answer and counterclaim, PWA filed a motion to dismiss and requested a release of the notice of *lis pendens*. The memorandum in support of the motion to dismiss also raises the issue of arbitration. In the second paragraph of the introduction section of the memorandum in support of the motion to dismiss, PWA states that the recording of the *lis pendens* was improper because the purchase contract terminated on its own terms and because "Section 15 was superseded by Addendum No. 1, whereby the parties agreed to arbitrate any disagreement over the terms of the agreement without the threat of an action being filed or *lis pendens* being recorded." While the focus of PWA's motion to dismiss is the assertion that the purchase contract expired on its terms because the contingencies were not met, PWA raises the arbitration provision as a reason to dismiss CFI's complaint. In the recitation of the facts, PWA declares that CFI's complaint and *lis pendens* were "expressly barred by paragraph 12 of Addendum No. 1" and that "the parties agreed to arbitrate any disagreement over the terms of the agreement without the threat of an action being filed or *lis pendens* being recorded." PWA also attached a copy of the November 12, 1999 letter to its memorandum in support of the motion to dismiss, and it referenced the letter in the body.

¶ 7 Because PWA's motion to dismiss was accompanied by numerous affidavits, the trial court considered it as a motion for summary judgment. *See* Utah R. Civ. P. 12(b)-(c). In a minute entry the trial court indicated that it would grant summary judgment for PWA on the claim for specific performance, but the claim for damages for breach of contract would remain. On February 28, 2000, the court entered its order, dismissing CFI's claim for specific performance and ordering the release of the *lis pendens*, but not dismissing the claim for damages based on the breach of contract claim.

¶ 8 Before the February 28 order was entered, but after the parties were informed that the damages claim would not be dismissed, the parties participated in discovery.

The parties held a rule 26(f) scheduling conference and submitted a scheduling order to the court on the same day. PWA provided initial disclosures to CFI on March 3.

¶9 On March 9, 2000, ten days after the February 28 order was issued, PWA filed a motion to compel arbitration. The parties argued the motion on May 17, and on May 25, the trial court denied the motion. While the trial court's written order does not provide any reasoning for the denial of the motion, the transcript of the May 17 hearing indicates that the trial judge determined that the motion should be denied because arbitration was not a meaningful option since there was no remedy for the breach of contract claims.[1] PWA appeals the order denying the motion to compel arbitration.[2]

## ANALYSIS

¶10 As a general rule, whether a trial court correctly decided a motion to compel arbitration is a question of law which we review for correctness, according no deference to the trial judge. *E.g., Docutel Olivetti Corp. v. Dick Brady Sys., Inc.,* 731 P.2d 475, 479 (Utah 1986); *see also Reed v. Davis County Sch. Dist.,* 892 P.2d 1063, 1064 (Utah Ct.App.1995). Because "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct.

1347, 4 L.Ed.2d 1409 (1960), whether the motion to compel arbitration was erroneously denied is first a matter of contract interpretation. *See Jenkins v. Percival,* 962 P.2d 796, 799 (Utah 1998). Therefore, we must initially determine whether the parties bargained for arbitration as a method of resolving their disagreements regarding the real estate purchase contract. Then, if the parties agreed to arbitrate, we address whether the right to arbitrate was waived.

## I. CONTRACT INTERPRETATION

¶11 PWA argues the parties agreed to arbitrate any disputes relating to the real estate purchase contract. PWA claims the plain language of the agreement indicates that the parties bargained for arbitration. PWA also maintains that the contractual provisions, when harmonized to give effect to all terms, indicate the parties agreed to arbitrate. PWA asserts that addendum 1, paragraph 12, the provision containing the arbitration provision, superseded any conflicting provisions in the pre-printed portion of the contract, particularly sections 15 and 16 that address mediation and default. PWA also advocates, however, that if the provisions cannot be harmonized, the addendum controls; and the first sentence of paragraph 12 of the addendum mandates that any disagreements shall be arbitrated. CFI, on the other hand, argues the arbitration clause is

---

1. The trial judge stated:

   I think there is a policy and it's continuing to evolve to favor arbitration agreements, and I think the Courts where they can, do compel arbitration. I think because one, it's a more rapid remedy; [two], it's agreed upon by the parties; and perhaps—I hope that's not my motivation—is because it relieves the Court's docket somewhat. Nevertheless, people have a right to their day in court, unless there is a clear arbitration alternative.

   Now, the waiver argument, there [are] certainly actions by the defendant that were inconsistent with the arbitration. On the other hand, there were actions that were consistent. I am not persuaded that waiver applies in this case, but that doesn't resolve the issue for me, because before a court should order arbitration, I think it needs to be persuaded that arbitration is a bona fide option.

   As I look at this case as carefully as I can, I look at the arbitration provision. I think it

   was appropriately used by the defendants and relied upon by the court to some extent in ruling on the *lis pendens* and the other issues in January to determine that in fact there was any—it was evidence of the intent of the parties [not to] impede the project. I think that's clear, but the more I look at that provision, I think it's not even an arbitration provision.

   In any event, if I [were] to refer this matter or compel arbitration, I think I would be compelling plaintiffs to go into a forum where they are almost doomed to no remedy, nothing more than to be back where they were before, and I don't think that's an appropriate use of the arbitration mechanism.

   I'm denying the motion to compel.

2. PWA moved the trial court to stay all proceedings on July 7, 2000, but this motion was denied by the trial court on September 5, 2000. As a result, PWA moved this court for a stay pending resolution of the appeal on September 12, 2000, which this court granted on October 17, 2000.

invalid because the arbitration option provided for by the contract is not meaningful, and it does not provide for a remedy for the breach of contract claims. According to CFI, placing the parties back in the positions they were in before entering into the deal is not a remedy; CFI claims it should be placed in as good of a position as if the contract had been performed, and the return of earnest money does not put CFI in the position of the contract being performed. CFI further asserts that this dispute does not fall within the arbitration provision because addendum 1, paragraph 12 only applies when there is a disagreement over the terms of the contract, and breach of contract and specific performance claims are not disagreements over contractual terms. Moreover, CFI claims the dispute resolution provisions do not limit the right to pursue litigation.

■■■■ ¶ 12 In interpreting a contract, the intentions of the parties are controlling. *Dixon v. Pro Image, Inc.,* 1999 UT 89, ¶ 13, 987 P.2d 48 (quotation omitted). "[W]e first look to the four corners of the agreement to determine the intentions of the parties." *Ron Case Roofing & Asphalt v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989); *see also Reed v. Davis Co. Sch. Dist.,* 892 P.2d 1063, 1064–1065 (Utah Ct.App.1995). If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law. *Dixon,* 1999 UT 89 at ¶ 14, 987 P.2d 48 (citing *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.,* 899 P.2d 766, 770 (Utah 1995)). If the language within the four corners of the contract is ambiguous, however, extrinsic evidence must be looked to in order to determine the intentions of the parties. *Id.* In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms. *Id.; see also Buehner Block Co. v. UWC*

*Assocs.,* 752 P.2d 892, 895 (Utah 1988). "An ambiguity exists where the language 'is reasonably capable of being understood in more than one sense.'" *Dixon,* 1999 UT 89 at ¶ 14, 987 P.2d 48 (quoting *R & R Energies v. Mother Earth Indus., Inc.,* 936 P.2d 1068, 1074 (Utah 1997) (further quotation omitted)). Accordingly, we first look to the plain language within the four corners of the agreement to determine the intentions of the parties, and we attempt to harmonize the provisions in the pre-printed and addendum portions of the agreement.

■■ ¶ 13 The parties agreed that if the contractual provisions conflicted, the terms of the addendum would control. The addendum provides for arbitration. At the end of the addendum is the language, "[To] the extent the terms of this ADDENDUM modify or conflict with any provisions of the [Real Estate Purchase Contract], including all prior addenda and counteroffers, these [ter]ms shall control." In the body of the addendum is the following language: "Any disagreement over the terms of this agreement shall be arbitrated by parties agreed upon by both Buyer and Seller. If agreement cannot be reached within 60 days from the beginning of an arbitration process Buyer shall receive its money back and this agreement shall be null and void." Because the addendum unambiguously declares that the parties bargained for arbitration as the method of dispute resolution if the terms of the pre-printed portion of the contract and addendum conflict, we turn to whether the dispute resolution terms conflict, or whether they can be harmonized.

¶ 14 On their face, the dispute resolution provisions conflict, and they cannot reasonably be harmonized. The agreement sets forth two different provisions regarding the resolution of disputes: section 15 of the pre-printed portion of the agreement and paragraph 12 of the addendum portion of the agreement.[3] Section 15 directs that "any

---

3. The addendum is part of the original agreement, not an additional or superseding agreement entered into at a later date. The pre-printed portion and the addendum are both signed and dated June 12, 1998. The language in the pre-printed portion of the agreement also evidences that the addendum is part of the original agreement. Section 1, the section describing the property, references the Addendum. Section 3, the section regarding closing, also incorporates the Addendum: "CLOSING. This transaction shall be closed on or before Addendum." Further, Section 14 reads, "14. COMPLETE CONTRACT. This instrument (together with its

dispute or claim relating to [the] Contract ... shall first be submitted to mediation." Paragraph 12 of the Addendum directs otherwise, that "[a]ny disagreement over the terms of this agreement shall be arbitrated by parties agreed on by both Buyer and Seller." A harmonization of the dispute resolution provisions would necessarily include a process that includes both mediation and arbitration, for example, that the parties bargained to mediate first, then arbitrate. However, the language of the competing dispute resolution provisions and other provisions of the agreement do not support this interpretation. Both the mediation provision and the arbitration provision indicate that any and all disputes relating to the contract or its terms would be resolved either through mediation or arbitration, not both. Moreover, the fact that the contract indicates that provisions may conflict, and that when they conflict the addendum controls, gives credence to the conclusion that arbitration trumps mediation as the agreed upon dispute resolution process.

¶ 15 Two further provisions mention additional possible procedures to be followed for resolving disputes outside of mediation or arbitration. They also conflict. The second-to-last sentence of Section 15 in the pre-printed portion indicates that "[n]othing in this *[Sect]ion* shall prohibit the Buyer from seeking specific performance by the seller by filing a complaint with the court, serving it on the seller by means of [Sum]mons or as otherwise permitted by law, and recording a *lis pendens* with regard to the action provided that the Buyer permits the Seller to refrain from [answ]ering the complaint pending mediation." Paragraph 12 of the addendum portion of the agreement, however, conflicts. Paragraph 12 indicates that "*Any* disagreement over the terms of the agreement shall be arbitrated ... [and][i]f agreement cannot be reached within 60 days ... the Buyer shall receive its money back and this agreement shall be null and void." (Emphasis added.) Thus, the provision in the pre-printed portion of the agreement contemplates the filing of a complaint, while the addendum contemplates that a complaint would never

be filed but that *any* disagreements would be arbitrated, and if arbitration failed, the parties would be returned to their respective positions before the contract was entered into. The filing of a complaint and *lis pendens* conflicts with the addendum instructions that any disagreement must be arbitrated. As a result, the addendum again controls.

¶ 16 Moreover, if there is any question as to whether the parties agreed to resolve their disputes through arbitration or litigation, i.e., through the filing of a complaint and recording of a *lis pendens,* we interpret the agreement keeping in mind our policy of encouraging arbitration. "It is the policy of the law in Utah to interpret contracts in favor of arbitration, 'in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate.'" *Reed v. Davis County Sch. Dist.,* 892 P.2d 1063, 1065 (Utah Ct.App.1995) (quoting *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.,* 731 P.2d 475, 479 (Utah 1986)); *see also McCoy v. Blue Cross Blue Shield,* 2001 UT 31, ¶ 14, 20 P.3d 901 ("It is our policy to interpret arbitration clauses in a manner that favors arbitration." (quoting *Docutel Olivetti,* 731 P.2d at 479)); *Chandler v. Blue Cross Blue Shield,* 833 P.2d 356, 358 (Utah 1992) (stating "this court has also recognized the strong public policy in favor of arbitration 'as an approved, practical, and inexpensive means of settling disputes and easing court congestion.'").

¶ 17 Finally, we are not persuaded by CFI's assertion that this dispute does not fall within the arbitration provision because it is a dispute over the *enforcement* of the agreement, as opposed to a dispute over the *terms* of the agreement. CFI claims that addendum 1, paragraph 12 applies only to disagreements over the terms of the contract, and that claims for breach of contract and specific performance are not disagreements over contractual terms. In this instance, to distinguish between the terms themselves and enforcement of the terms

Addenda, any attached Exhibits, and Seller Disclosures) constitutes the entire Contract [be-

tw]een the parties and supersedes all prior dea[lings] [b]etween the parties."

would be meaningless—a distinction without a difference.

¶ 18 To interpret the agreement in this way would, in effect, nullify the agreement to arbitrate. Put otherwise, an agreement to arbitrate only terms of an agreement is of no effect if the parties can simply bring suit to enforce their interpretation of the terms of the agreement. For example, arbitration of whether zoning approval must be provided (a dispute over "terms") would be meaningless if one of the disputing parties could simply proceed to court and claim specific performance of the disputed guaranteed zoning based on a favorable interpretation of the "term." The language of the addendum indicates an intent to arbitrate. If the exception advocated by CFI, litigation to enforce the agreement, were permitted, it would swallow the bargain that "any disagreement over the terms of this agreement shall be arbitrated." Moreover, CFI's proposed interpretation would be contrary to the parties' intent, apparent from the four corners of the agreement, to avoid litigation and resolve any disputes through arbitration.[4]

¶ 19 Accordingly, we conclude that the plain language of the agreement provides that the parties agreed to arbitrate any and all disputes pertaining to the agreement. The agreement declares that the terms of the addendum control if the provisions in the addendum conflict with the provisions in the pre-printed portion. The dispute resolution language in the pre-printed portion and the dispute resolution language in the addendum conflict and cannot be harmonized. Because these provisions conflict, the dispute resolution provision of the addendum, which unambiguously indicates an agreement to arbitrate, controls.

## II. WAIVER

¶ 20 Because we conclude that the parties agreed to resolve their disagreements regarding the real estate purchase contract through arbitration, we address whether this contractual right to arbitrate was waived. "[W]hether a contractual right of arbitration has been waived presents mixed questions of law and fact: whether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572 (citing *Chandler.v. Blue Cross Blue Shield*, 833 P.2d 356, 360 (Utah 1992)).

¶ 21 PWA argues it did not waive its right to arbitrate. PWA claims that under the standard of *Chandler v. Blue Cross Blue Shield*, 833 P.2d 356 (Utah 1992), there is a presumption against waiver of the right to arbitrate, that it did not participate in litigation to a point inconsistent with the intent to arbitrate, and that CFI was not prejudiced by PWA's actions. PWA contends that filing its motions to dismiss and to quiet title does not constitute participation in litigation to a point inconsistent with the intent to arbitrate because they were necessary to obtaining relief from the *lis pendens* or required by the Utah Rules of Civil Procedure, and PWA notes it offered arbitration as an alternative argument to dismissal. Moreover, PWA asserts that CFI was not prejudiced because PWA did not delay in asserting the right to arbitrate, and the motion to dismiss, motion to quiet title, and the answer and counterclaim all referenced the arbitration clause. CFI counters that PWA waived its right to arbitrate under *Chandler*. CFI contends that PWA participated in litigation to a point inconsistent with the intent to arbitrate by answering the complaint, bringing a counterclaim, participating in scheduling, and by exchanging initial disclosures, thereby invoking the power of the courts and availing itself of the benefits of litigation. CFI also claims it

---

4. As the trial court observed, the arbitration provision agreed upon by the parties provides for an extremely narrow range of options: The parties must agree to a solution within 60 days, or the contract is cancelled, and CFI gets its earnest money back. While in retrospect this may not include all of the options CFI now desires, the provision is completely consistent with the parties' intent at the outset to bring a prompt and sure resolution to disputes that arose. While CFI now argues, in effect, that such a narrow choice of remedies is so foolish as to be no remedy at all, it is the bargain they struck with PWA, and it is not for the courts to save them from it.

has been prejudiced because PWA gained an advantage by having the specific performance claim dismissed, and now there is no practical way to allow all of the claims to proceed to arbitration. CFI also claims the costs incurred in participating in discovery and in responding to the motion to dismiss and quiet title constitute prejudice.

¶ 22 The trial court was correct to apply *Chandler.* In *Chandler,* this court set forth the standard for determining whether a party has waived a contractual right of arbitration. Waiver of a right to arbitration occurs when: [1] the party seeking arbitration substantially participates in litigation, to a point inconsistent with the intent to arbitrate, *and* [2] this participation results in prejudice to the opposing party. *Chandler,* 833 P.2d at 358, 360. Both parts of the *Chandler* test must be met in order to find waiver.

¶ 23 Whether a party has waived the right to arbitrate is a factually intensive determination; the court must infer the original intent of the party asking for arbitration on a case-by-case basis. *Chandler,* 833 P.2d at 358 n. 8; *see also Bd. of Educ. Taos Mun. Sch. v. Architects,* 103 N.M. 462, 709 P.2d 184, 185 (1985) (stating that whether a party has waived the right to arbitrate "depends on the facts of each case, from which the court must infer the original intent of the party now asking for arbitration"). *See generally,* Joel E. Smith, Annotation, *Defendant's Participation in Action as Waiver of Right to Arbitration of Dispute Involved Therein,* 98 A.L.R.3d. 767 (1980 & Supp.2001) (surveying cases which demonstrate that waiver cases are highly fact dependent, and, as a result, outcomes of both waiver and no waiver vary widely based on the specific facts of each case).

¶ 24 Furthermore, given the strong policy of the law in Utah in favor of arbitration, *see, e.g., Chandler v. Blue Cross Blue Shield,* 833 P.2d 356, 358 (Utah 1992), *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.,* 731 P.2d 475, 479 (Utah 1986), there is also a strong presumption against waiver of the right to arbitrate. *See Chandler,* 833 P.2d at 358–60. *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (explaining the federal policy favoring arbitration for agreements that fall within the United States Arbitration Act, indicating that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"); *Creative Solutions Group, Inc. v. Pentzer Corp.,* 252 F.3d 28, 32 (1st Cir.2001) (indicating that waiver is disfavored); *County of Clark v. Blanchard Const. Co.,* 98 Nev. 488, 653 P.2d 1217, 1219 (1982) (noting that because of Nevada's policy strongly favoring arbitration, "waiver should 'not be lightly inferred' " (citation omitted)); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996) (citing *Moses H. Cone* for the proposition that "[t]he [federal arbitration act] disfavors waiver, and there is a strong presumption against waiver"). Because of our strong presumption against waiver in Utah, waiver of the right to arbitrate must be intentional, and inferring waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate. *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996). In determining whether a party disregarded, or waived, its right to arbitrate, we look to whether the party substantially participated in litigation to a point inconsistent with the intent to arbitrate, and if so, whether that participation resulted in prejudice to the opposing party. *Chandler,* 833 P.2d at 358, 360; *EZ Pawn Corp.,* 934 S.W.2d at 89. The party claiming waiver has the burden of establishing substantial participation and prejudice. *Chandler,* 833 P.2d at 359; *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir.1985) (stating that under the federal arbitration act "[t]he burden on one seeking to prove a waiver of arbitration is a heavy one") (citation omitted).

A. *Whether the Party Seeking Arbitration Substantially Participated in Litigation to a Point Inconsistent with the Intent to Arbitrate*

¶ 25 Because we determined that the parties agreed to arbitration, we consider

whether this contractual right to arbitrate was waived. In so doing, we apply the *Chandler* test, analyzing first whether PWA, the party seeking arbitration, substantially participated in litigation to a point inconsistent with the intent to arbitrate. We conclude that PWA did not.

¶ 26 This first part of the *Chandler* test looks at the actions of the party seeking arbitration, and whether those actions evidence an intent to submit to the jurisdiction of the court and pursue redress through litigation. Participation in discovery and other aspects of litigation that do not necessarily involve the court are factors we consider in trying to ascertain a party's intent or attitude toward its participation in litigation. Requests made of the court by the parties, however, have even greater weight. We consider especially important whether the parties' requests of the court demonstrate an intent to pursue litigation or whether they demonstrate an intent to avoid litigation and a desire to be sent to arbitration. Accordingly, parties seeking to enforce arbitration should ensure that the *court*, not just the opposing party, is informed that arbitration is desired. In doing so, judicial resources will be appropriately conserved.

¶ 27 We agree with the trial court that, although a close call, waiver did not occur in this case. *See supra*, n. 1. PWA did not substantially participate in litigation to a point inconsistent with the intent to arbitrate; PWA's actions do not demonstrate it intended to disregard its right to arbitrate. Ideally, PWA would have raised arbitration in its answer and counterclaim and then brought a motion to compel arbitration before filing any other pretrial motions, such as the motion to dismiss. While this did not occur, the particular facts of this case evidence the intent of PWA to arbitrate.

¶ 28 On one hand, we recognize that PWA's actions constitute participation in litigation. PWA filed an answer and counterclaim, and it filed a motion to dismiss before it filed its motion to compel arbitration. PWA's answer did not mention arbitration, and the motion to dismiss raised four arguments, none of which expressly articulated arbitration as a reason for dismissing the

action. Plus, PWA invoked the authority of the court by filing these pleadings before filing the motion to compel arbitration, particularly the motion to dismiss.

¶ 29 Nevertheless, PWA did not participate in litigation to such an extent that it acted inconsistently with the intent to arbitrate. PWA's actions do not demonstrate that it intended to disregard or waive its right to arbitrate. To the contrary, PWA's actions demonstrate reluctant, unwilling participation in litigation and an intent to arbitrate.

¶ 30 First, PWA's November 12, 1999 letter clearly evidences PWA's position that arbitration of any dispute relating to the purchase agreement was required under the agreement and that litigation was improper. In the letter PWA notified CFI of its intent to avoid litigation and arbitrate just days after CFI filed its complaint. This letter was presented to the trial court in the memorandum in support of the motion to dismiss and referenced in the argument. Second, the memorandum in support of the motion to dismiss also evidences PWA's intent to arbitrate and reluctant participation in litigation. The second paragraph in PWA's memorandum in support of the motion to dismiss states, "Section 15 was superseded by Addendum No. 1, whereby the parties agreed to arbitrate any disagreement over the terms of the agreement without the threat of an action being filed or *lis pendens* being recorded." The memorandum later states again, albeit in the factual background section, that "the filing of this action and the recording of [the] lis pendens are expressly barred by paragraph 12 of Addendum No.1 [the arbitration section]." Third, even though the answer portion of PWA's answer and counterclaim does not explicitly mention arbitration, the fourth cause of action in the counterclaim presents the existence of the arbitration agreement as a reason to find for PWA. The heading, "Breach of Covenant of Good Faith and Fair Dealing," does not expressly mention arbitration, but the substance of the charge is that CFI's filing of a complaint and *lis pendens* violated the agreement to arbitrate. The counterclaim reads, "CFI's breaches of the Purchase Contract, including

but not limited to its recording of a *lis pendens* and asserting other claims against the Property *in direct violation of section 12 of Addendum No. 1* and in breaching its many agreements with PWA that it would cooperate with PWA to achieve the closing and that it would not claim an interest in the Property, constitute a breach of CFI's obligations of good faith and fair dealing implied in all Utah contracts." (Emphasis added.)

¶ 31 Thus, while PWA participated in litigation, it did so unwillingly, and it did not convey an intent to disregard its right to arbitrate. The fact that it sent the November 12 letter to CFI, and the fact that the letter was presented to the trial court as part of the memorandum in support of the motion to dismiss, combined with the raising of the arbitration clause in the counterclaim as a reason to find against CFI, evidences an intent to arbitrate. Through the letter, counterclaim, and the motion to dismiss which included and referenced the November 12 letter, PWA apprised both CFI and the court of its position that litigation of the matter was improper, of its reluctance to litigate, and of its intent to arbitrate.

¶ 32 Moreover, while PWA certainly could have more clearly indicated that it was litigating under protest and that it wanted to arbitrate, PWA participated in the litigation process unwillingly. PWA was, to a certain extent, compelled to file these pleadings to comply with the rules of civil procedure. The Utah Rules of Civil Procedure imposed requirements and deadlines on PWA to participate as it did in pretrial discovery and in the filing of pretrial motions. If we were to hold that PWA's participation in the litigation process, particularly discovery, regardless of its intent regarding arbitration or the extent of its participation in litigation, the result would be that in subsequent cases parties would arguably always waive arbitration in complying with deadlines imposed by the rules governing litigation in the courts.

¶ 33 Furthermore, we must factor in the strong policy of the law in Utah in favor of arbitration, the strong presumption against waiver of the right to arbitrate, and the burden of establishing substantial participation on the party claiming waiver. If

participation in discovery and pretrial motions, standing alone, irrespective of the parties' intentions, were to constitute waiver of the right to arbitrate, the strong policy favoring arbitration would be damaged. This court has long "recognized the strong public policy in favor of arbitration 'as an approved, practical, and inexpensive means of settling disputes and easing court congestion.'" *Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 358 (Utah 1992) (quoting *Robinson & Wells, P.C. v. Warren*, 669 P.2d 844, 846 (Utah 1983), and citing *Lindon City v. Eng'rs Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981), and *Giannopulos v. Pappas*, 80 Utah 442, 15 P.2d 353, 356 (1932)). Because participation in litigation brought by the opposing party is required by the rules of procedure, limited participation does not conclusively establish an intent to litigate.

¶ 34 In sum, although PWA participated in the litigation process in this case, it did so reluctantly, demonstrating a sufficient intent to arbitrate. PWA communicated to CFI and the district court that its participation in litigation was reluctant and that it wished to arbitrate. PWA clearly expressed to CFI in the November 12, 1999 letter that it wished to arbitrate, and PWA also conveyed to the court, albeit not as clearly as it could have, that it wished to arbitrate in its counterclaim, and memorandum in support of its motion to dismiss. Significantly, the litigation machinery was not invoked by PWA, and when it did participate in the litigation process, it did so while communicating an intent to arbitrate. Because PWA conveyed its intent to arbitrate to the court (in its pleadings) and to CFI (in both a letter and in its pleadings), PWA's participation in litigation, while not minimal, did not demonstrate an intent to no longer arbitrate.

### B. Whether the Party Opposing Arbitration was Prejudiced

¶ 35 Because PWA did not participate in litigation to a point inconsistent with the intent to arbitrate, we need not consider whether CFI, the party opposing arbitration, was prejudiced due to PWA's participation in the litigation process. Under *Chandler*, both parts of the test must be met. *Chandler*, 833

P.2d at 358, 360. Since that is not the case here, we conclude that PWA did not waive its right to arbitrate the dispute with CFI.[5]

## CONCLUSION

¶ 36 We conclude that the parties agreed to arbitrate. We also conclude that PWA did not waive its right to arbitrate because PWA did not participate in litigation to a point inconsistent with the intent to arbitrate.

¶ 37 Accordingly, the trial court's order denying the motion to compel arbitration is reversed.

¶ 38 Associate Chief Justice RUSSON, Justice DURHAM, Judge GREENWOOD, and Judge THORNE concur in Justice WILKINS' opinion.

¶ 39 Having disqualified himself, Chief Justice HOWE does not participate herein. Court of Appeals Judge PAMELA T. GREENWOOD sat.

¶ 40 Having disqualified himself, Justice DURRANT does not participate herein. Court of Appeals Judge WILLIAM A. THORNE sat.

5. Arguably CFI was prejudiced in a sense, in that PWA gained an advantage by having CFI's complaint for specific performance dismissed. Under the agreement, however, CFI had no right to file the complaint for specific performance with its accompanying *lis pendens*. The parties should have been sent to arbitration, with neither party presenting anything before the district court for consideration and decision. Thus, where CFI actually was not entitled to bring the complaint, having it dismissed, along with the *lis pendens*, is not a legal detriment in this case. Moreover, CFI's claim that it has been prejudiced by the time and expense of discovery is not compelling given the fact that PWA indicated a desire to arbitrate in the November 12 letter before discovery commenced.