MOORE, Judge.
Bad Ass Coffee Company of Hawaii, Inc. (“the coffee company”), appeals from the Tuscaloosa Circuit Court’s denial of its motion to compel arbitration in a civil case brought by Naughty Donkey Enterprises, LLC, Forest Doles, and Robert Derieux (hereinafter collectively referred to as “the plaintiffs”). We affirm.

Facts and Procedural History

On June 29, 2009, the plaintiffs filed a complaint against the coffee company alleging that the coffee company had defaulted on a promissory note that had been executed in December 2006 (“the promissory note”). The plaintiffs attached a copy of the promissory note to the complaint.
On August 17, 2009, the coffee company filed a motion to stay the proceedings and to compel arbitration, alleging:
“1. [The plaintiffs] and [the coffee company] are parties to a Termination, Mutual Release, and Confidentiality Agreement dated December 5, 2006, (hereinafter ‘Agreement’) a copy of which is attached hereto as Exhibit T and made a part hereof.
“2. [The plaintiffs] filed their complaint with this Honorable Court seeking to enforce claims against [the coffee company] which arise out of and which are directly related to the Agreement. ...
“3. The Agreement ... contains in Item 5 Page 5 a mandatory arbitration provision and also provides a requirement that the Agreement is governed by Utah law.

“ ‘All issues or disagreements relating to this Agreement, will be arbitrated, tried, heard, and decided in Salt Lake City, Utah.

“ ‘This Agreement is accepted in the State of Utah and will be governed by Laws of Utah.... ’
*661 “4. The claims of [the plaintiffs] in their Complaint filed with the Court specifically reference the Agreement ... in paragraphs 11, 20 and 28 of their Complaint. The Agreement ... is the contract referenced in Count 1 of [the plaintiffs’] Complaint and incorporates the Promissory Note sued upon in Count 2 of [the plaintiffs’] Complaint. Item 1 Page 1 of the Agreement ... states in part:
“ ‘In consideration for this Agreement, [the coffee company] has paid to [the plaintiffs] an initial payment of $21,000 in the form of a check, receipt of which is acknowledged. In addition, [the coffee company] has executed the attached promissory note to pay to [the plaintiffs] the amount of $189,000 bearing 0% interest from the date of the note until paid in full with an increase to 15% if [the coffee company] defaults on the note.’
“5. Where parties enter into a binding Agreement providing for arbitration of all disputes the United States Supreme Court has stated in Southland Corp. v. Keating, 465 U.S. 1 (1984) that Congress, in enacting § 2 of the Federal Arbitration Act, created a substantive rule of law applicable in state court and ‘withdraw the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.’ Id. at 10, 14-15.”
(Emphasis in original.) The plaintiffs did not respond to the motion.
On April 14, 2010, the trial court entered an order denying the coffee company’s motion to stay and to compel arbitration, specifically finding that there was no binding arbitration agreement. On May 6, 2010, the coffee company filed its notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Discussion

On appeal, the coffee company argues that the trial court erred in denying its motion to compel arbitration. “[T]he interpretation of an arbitration agreement is generally a matter of state law.” Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., — U.S. -, -, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010). The parties entered into a Termination, Mutual Release, and Confidentiality Agreement (“the agreement”) on December 5, 2006. The agreement contains a choice-of-law provision; pursuant to that provision, this court must apply Utah state law in construing the agreement. See Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1133 (Ala.2003) (“ ‘Alabama law has long recognized the right of parties to an agreement to choose a particular state’s laws to govern an agreement.’ ” (quoting Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991))); see also Ex parte Colquitt, 808 So.2d 1018, 1023 (Ala.2001) (“The parties do not dispute that, pursuant to the ‘choice-of-law’ provision in the Agreement, this Court must apply Delaware law and federal law in construing the Agreement.”); and Karl Storz Endoscopy-America, Inc. v. Integrated Med. Sys., Inc., 808 So.2d 999, 1008 (Ala.2001) (“The parties agree that the resolution of these issues turns on the application of the substantive law of California, within the framework of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the ‘FAA’).”).
Pursuant to Utah law, “whether a trial court correctly decided a motion to compel arbitration is a question of law which we review for correctness, according no deference to the trial judge.” Central Florida Invs., Inc. v. Parkwest Assocs., 40 P.3d 599, 604 (Utah 2002). Utah Code Ann. § 78B-11-107 (1953), a part of the *662 Utah Uniform Arbitration Act, Utah Code Ann. § 78B-11-101 et seq. (1953),[1] provides, in pertinent part:
“(1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.
“(2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.”
§ 78B-11-107(1) & (2). Utah Code Ann. § 78B-11-108 (1953), provides, in pertinent part:
“(1) On motion of a person showing an agreement to arbitrate and alleging another person’s refusal to arbitrate pursuant to the agreement:
“(a) if the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
“(b) if the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
[[Image here]]
“(3) If the court finds that there is no enforceable agreement, it may not, pursuant to Subsection (1) or (2), order the parties to arbitrate.”
§ 78B-11-108(1) & (3). Thus, under § 78B-11-108(1), the party seeking to compel arbitration has the initial burden of “showing an agreement to arbitrate.”
“Because ‘[arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,’ United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), whether the motion to compel arbitration was erroneously denied is first a matter of contract interpretation. See Jenkins v. Percival, 962 P.2d 796, 799 (Utah 1998)....
[[Image here]]
“In interpreting a contract, the intentions of the parties are controlling. Dixon v. Pro Image, Inc., 1999 UT 89, ¶ 13, 987 P.2d 48 (quotation omitted). ‘[W]e first look to the four corners of the agreement to determine the intentions of the parties.’ Ron Case Roofing & Asphalt v. Blomquist, 773 P.2d 1382, 1385 (Utah 1989); see also Reed v. Davis Co. Sch. Dist., 892 P.2d 1063, 1064-1065 (Utah Ct.App.1995). If the language within the four corners of the contract is unambiguous, the parties’ intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law. Dixon, 1999 UT 89 at ¶ 14, 987 P.2d 48 (citing Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co., 899 P.2d 766, 770 (Utah 1995)). If the language within the four corners of the contract is ambiguous, however, extrinsic evidence must be looked to in order to determine the intentions of the parties. Id. In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract’s provisions and all of its terms. Id.; see also Buehner Block Co. v. UWC Assocs., 752 P.2d 892, 895 (Utah 1988). ‘An ambiguity exists where the language “is reasonably capable of being understood in *663 more than one sense.’” Dixon, 1999 UT 89 at ¶ 14, 987 P.2d 48 (quoting R & R Energies v. Mother Earth Indus., Inc., 936 P.2d 1068, 1074 (Utah 1997) (further quotation omitted)).”
Central Florida Invs., 40 P.3d at 604-05.
In the present case, the language in the agreement upon which the coffee company relies in support of its position that the parties had a binding arbitration agreement is contained in the following paragraph:
“This Agreement is accepted in the State of Utah and will be governed by the laws of Utah which laws will prevail. ... This choice of laws will not include and does not extend the scope of application of the Utah franchise or business opportunity laws. All issues or disagreements relating to this Agreement will be arbitrated, tried, heard, and decided in Salt Lake City, Utah.”
The language in the above-quoted provision mandates that “[a]ll issues or disagreements relating to [the] Agreement will be arbitrated.... ” In reading the entirety of the provision, however, an ambiguity becomes apparent. The provision requires not only that the issues or disagreements be arbitrated, but also requires that the issues or disagreements be “tried, heard, and decided.”
According to Utah law:
“Arbitration is ‘[a] method of dispute resolution involving one or more neutral third parties ... whose decision is binding.’ Black’s Law Dictionary 100 (7th ed.1999); see also Reed v. Davis County Sch. Dist., 892 P.2d 1063, 1065 (Utah Ct.App.1995); 6 C.J.S. Arbitration § 1 (1975). Specifically, an arbitration is a broad, ‘quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses.’ Hartford Lloyd’s Ins. Co. v. Teachworth, 898 F.2d 1058, 1062 (5th Cir.1990).”
Miller v. USAA Cas. Ins. Co., 44 P.3d 663, 672 (Utah 2002).
In contrast, according to Merriam-Webster’s Collegiate Dictionary 1344 (11th ed.2003), the word “try” is defined as “to examine or investigate judicially.” Furthermore, the Third District Court of Appeals of the State of California has explained: “An arbitration proceeding is not deemed to be the trial of a cause before a judicial tribunal. It merely provides a summary and expeditious means of attempting to determine controversies out of court pursuant to a stipulation of the parties in a written contract.” Snyder v. Superior Court, 24 Cal.App.2d 263, 267, 74 P.2d 782, 784 (1937).
Based on the foregoing, it is clear that the plain meaning of the word “arbitrate” involves a quasi-judicial proceeding, whereas the plain meaning of the word “try” involves a judicial proceeding. Although we have found one Alabama case in which this court referred to an issue being “tried before [an] arbitrator,” see McKee v. Hendrix, 816 So.2d 30, 34 (Ala.Civ.App.2001), we have located nothing similar in Utah caselaw. Because the plain language of the provision appears to require that all issues or disagreements be both arbitrated and tried by a court of law, we conclude that the provision is ambiguous. Thus, the trial court was authorized to accept “extrinsic evidence ... in order to determine the intentions of the parties.” Central Florida Invs., 40 P.3d at 605. We note, however, that the coffee company failed to offer any extrinsic evidence indicating the intentions of the parties. Thus, we cannot hold the trial court in error for not considering such evidence. See, e.g., Brookside Mobile Home Park, Ltd. v. Peebles, 48 P.3d 968, 972 (Utah 2002) (“[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a *664 way that the trial court has an opportunity to rule on that issue.”).
Because the coffee company failed to show that the agreement unambiguously evinced an intent to arbitrate and also failed to introduce any extrinsic evidence indicating an intent to arbitrate, we cannot hold the trial court in error for denying the coffee company’s motion to compel arbitration. Accordingly, we affirm the trial court’s judgment.[2]
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Although the current Utah Uniform Arbitration Act became effective on February 7, 2008, pursuant to Utah Code Ann. § 78B-11-104 (1953), the Act “applies to any agreement to arbitrate made on or after May 6, 2002.”

. The plaintiffs raise additional arguments in their brief to this court in support of their position that this court should affirm the trial court's order denying the coffee company’s motion to compel arbitration. Because we conclude that there was no evidence of an enforceable arbitration agreement, we preter-mit discussion of those arguments.