2004 UT 58

**CEDAR SURGERY CENTER, L.L.C.,**
Plaintiff and Appellant,

v.

Sherry **BONELLI** and Bonelli
& Associates, Defendants
and Appellees.

No. 20020718.

Supreme Court of Utah.

July 9, 2004.

Randall C. Allen, Cedar City, for plaintiff.

Michael D. Hughes, Aaron D. Randall, St. George, for defendants.

DURRANT, Justice:

¶ 1 In this appeal we consider a purported waiver of a contractual right to arbitration. Specifically, we address whether defendants Sherry Bonelli and Bonelli & Associates (collectively "the Bonellis") waived their contractual right to arbitration when they declined to participate in the underlying litigation and filed a motion to compel arbitration only after default judgment had been entered against them. Because plaintiff Cedar Surgery Center, L.L.C. ("Cedar Surgery") cannot establish that the Bonellis participated in the litigation to a point inconsistent with the intent to arbitrate, we affirm the district court's ruling setting aside the default judgment and compelling arbitration.

## BACKGROUND

¶ 2 On or about July 24, 2000, the parties entered into a contract under which the Bonellis agreed to perform certain professional services for Cedar Surgery. In the contract the parties agreed that, should any dispute arise over any provision of the contract, they would submit the dispute to binding arbitration in San Diego, California. When a subsequent dispute arose concerning the performance of the contract, however, Cedar Surgery chose not to arbitrate the matter. Instead, Cedar Surgery filed a complaint against the Bonellis in the Fifth Judicial District Court in Iron County, Utah.

¶ 3 After filing its complaint, Cedar Surgery personally served the Bonellis with notice of process. When the Bonellis failed to file an answer or responsive pleading, the district court entered a default judgment against them. When the Bonellis also failed to respond to the court's notice of a hearing to determine damages, the district court entered a judgment for damages in the amount of $381,370. Cedar Surgery mailed a notice of entry of judgment to the Bonellis on May 13, 2002.

¶ 4 On July 12, 2002, the Bonellis made their first appearance in this case by filing a rule 60(b) motion for relief from default judgment and a motion to compel arbitration based on the arbitration clause in the parties' contract. *See* Utah R. Civ. P. 60(b)(6). On

August 19, 2002, the district court granted both motions. The court set aside the default judgment and ordered the parties to submit to arbitration.

¶ 5 On September 9, 2002, Cedar Surgery filed a petition for interlocutory appeal, which this court granted. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 6 The issue of whether a contractual right of arbitration has been waived involves mixed questions of law and fact. *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572 (citing *Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 360 (Utah 1992)). "[W]hether the [district] court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Id.*

¶ 7 Additionally, because a district court "has broad discretion in deciding whether to set aside a default judgment," *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277, we will not reverse a district court's decision to set aside a default judgment absent an abuse of discretion. *See Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986).

### II. JURISDICTION

¶ 8 We first address the Bonellis' argument that this court lacks jurisdiction to hear this appeal because it was improperly brought as an interlocutory appeal, as opposed to a direct appeal.

¶ 9 Cedar Surgery petitioned for permission to appeal an interlocutory order pursuant to rule 5 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 5(a). The Bonellis contend this was error. They argue that when the district court ordered the parties to arbitrate their dispute in San Diego, California, the district court effectively "end[ed] the controversy between the par-ties" in this jurisdiction, and thus entered, in essence, a final judgment. *See Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979) (explaining that "[a] judgment is final when it ends the controversy between the parties"). Accordingly, the Bonellis contend that Cedar Surgery should have filed a direct appeal pursuant to rule 3 of the Utah Rules of Appellate Procedure, and that Cedar Surgery's failure to do so divests this court of jurisdiction to hear Cedar Surgery's appeal. Cedar Surgery counters that the district court's order was not a final order because even though the order set aside the default judgment and ordered the parties to arbitrate, it did not explicitly dismiss the case.

¶ 10 We need not decide whether the district court's order was final or not because, even assuming that the order was, in fact, a final order, this court would nevertheless have jurisdiction pursuant to rule 3. Rule 3 governs direct appeals and provides that a party may appeal "all final orders and judgments, except as otherwise provided by law, by filing a notice of appeal with the clerk of the trial court" within thirty days after the date of entry of the judgment or order. Utah R.App. P. 3(a), 4(a). Rule 3 goes on to state as follows: "*Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal,* but is ground only for such action as the appellate court deems appropriate. . . ." *Id.* 3(a) (emphasis added). This language clearly indicates that "the timely filing of the notice of appeal is the *only* jurisdictional step" implicated under rule 3(a). *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 19, 17 P.3d 1110 (emphasis added); *cf.* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3949.6 (1999) (noting federal courts have reached the same conclusion with respect to similar rules under the Federal Rules of Appellate Procedure).

¶ 11 Here, even if the district court's order was a final order as the Bonellis contend, there is no question that Cedar Surgery timely complied with the jurisdictional notice requirement of rule 3. The district court entered its ruling on August 19, and

Cedar Surgery filed a petition for permission to appeal with the district court clerk on September 9, 2002. Because Cedar Surgery filed this notice of appeal within the thirty-day filing period, we have jurisdiction to entertain Cedar Surgery's appeal.

¶ 12 Moreover, we would be disinclined to impose sanctions for Cedar Surgery's purported error in this case. "The object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case." *Nunley v. Stan Katz Real Estate, Inc.,* 15 Utah 2d 126, 128, 388 P.2d 798, 800 (1964); *Price v. W. Loan & Sav. Co.,* 35 Utah 379, 385, 100 P. 677, 679 (1909) When determining whether a notice of appeal is sufficient, we look to the substance of the notice—not its caption. *See Reeves v. Steinfeldt,* 915 P.2d 1073, 1077 (Utah Ct.App. 1996). Because Cedar Surgery otherwise complied with the content and service requirements of rule 3, *see* Utah R.App. P. 3(d)—(e), the Bonellis received adequate notice that Cedar Surgery was appealing the district court's order setting aside default judgment and ordering the parties to submit to arbitration. Accordingly, any purported misdesignation of the appeal as interlocutory, as opposed to direct, would be harmless.

## III. WAIVER OF THE RIGHT TO ARBITRATION

¶ 13 We next consider Cedar Surgery's contention that the Bonellis waived their right to arbitrate by declining to participate in the underlying litigation and allowing a default judgment to be entered against them.

¶ 14 This court has recognized the important public policy behind enforcing arbitration agreements as an " 'approved, practical, and inexpensive means of settling disputes and easing court congestion.' " *Chandler v. Blue Cross Blue Shield,* 833 P.2d 356, 358 (Utah 1992) (quoting *Robinson & Wells, P.C. v. Warren,* 669 P.2d 844, 846 (Utah 1983)). In light of this policy, we have also acknowledged that there is "a strong presumption against waiver of the right to arbitrate." *Cent. Fla. Invs., Inc. v. Par-*

*kwest Assocs.,* 2002 UT 3, ¶ 24, 40 P.3d 599. Consistent with our general waiver jurisprudence, *see Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n,* 857 P.2d 935, 939–40 (Utah 1993) (defining waiver as "the intentional relinquishment of a known right" (quotation omitted)), we have held that a "waiver of the right to arbitrate must be intentional," and a court may infer waiver "only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate." *Cent. Fla.,* 2002 UT 3 at ¶ 24, 40 P.3d 599. Hence, for a court to find that a party has waived its arbitration right, the party alleging waiver must demonstrate (1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate; and (2) that this participation resulted in prejudice to the opposing party. *Chandler,* 833 P.2d at 360; *Cent. Fla.,* 2002 UT 3 at ¶¶ 22, 24, 40 P.3d 599. "Whether a party has waived the right to arbitrate is a factually intensive determination," and we "infer the original intent of the party asking for arbitration on a case-by-case basis." *Cent. Fla.,* 2002 UT 3 at ¶ 23, 40 P.3d 599.

¶ 15 Cedar Surgery urges this court to reverse the district court and find that the Bonellis waived their contractual right to arbitration when they failed to participate at all in the underlying litigation. It invites us to, in essence, modify our arbitration jurisprudence to provide an exception that would prohibit a party from enforcing an arbitration agreement in cases where that party refuses to participate in an underlying litigation and allows default judgment to be entered against it. We decline to do so here.

¶ 16 The primary purpose of the first prong of *Chandler's* two-part waiver test is to allow a court to evaluate whether the party asserting the right to arbitrate has clearly manifested an intent to waive its right to arbitration. To accomplish this evaluation, *Chandler* and its progeny require a court to look at the actions of the party seeking arbitration, and to determine "whether those actions evidence an intent to submit to the jurisdiction of the court and pursue redress through litigation." *Cent. Fla.,* 2002 UT 3 at ¶ 26, 40 P.3d 599; *see also*

*Chandler*, 833 P.2d at 360; *Pledger v. Gillespie*, 1999 UT 54, ¶¶ 19–20, 982 P.2d 572. It would be difficult for a court to determine that a party has evidenced such an intent absent some participation in the underlying litigation itself.

¶ 17 We reached a similar conclusion in *Pledger*. That case involved a dispute over medical service payments between a physician, patient, and third-party insurance company. 1999 UT 54 at ¶ 2, 982 P.2d 572. After the physician obtained a summary judgment against her, the patient impleaded her insurance company as a third-party defendant to fulfill its obligation to pay for the physician's services. *Id.* at ¶ 7. The patient then granted the insurance company an indefinite extension to respond to her third-party complaint in order to allow the insurance company to resolve the dispute with the physician. *Id.* at ¶ 8. After two years of unsuccessful negotiations between the insurance company and the physician, the insurance company entered the litigation and asserted, for the first time, its contractual right of arbitration. *Id.* at ¶ 10. The district court denied the insurance company's motion to set aside the summary judgment and compel arbitration. *Id.* In reversing that decision, we held that the insurance company had not waived its right to arbitration, even where it delayed seeking arbitration until two years after it was first named as a party, because its actions, and most significantly its nonparticipation in the underlying litigation, did not evidence an intent to waive its right to arbitration and seek redress through the courts. *Id.* at ¶ 20.

¶ 18 We acknowledge that adherence to *Chandler's* participation standard may reward litigants who fail to respond to a complaint or district court proceeding. While we regret this result, we nevertheless believe that such a standard is entirely appropriate in cases such as this. Courts do not favor entry of default judgments and should grant relief where there is any reasonable excuse, unless it will substantially prejudice the adverse party. *Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975) (citing *Heathman v. Fabian & Clendenin*, 14 Utah 2d 60, 62, 377 P.2d 189, 190 (1962)) (further citation omitted). The failure of a party to participate in a lawsuit does not, standing alone, evince a clear intent by that party to waive its arbitration rights. This is the case even where the party's inaction results in the entry of a default judgment against it. Thus, we reaffirm the substantial participation standard articulated in *Chandler*, *Pledger*, and *Central Florida*. *See Chandler*, 833 P.2d at 360; *Pledger*, 1999 UT 54 at ¶ 19, 982 P.2d 572; *Cent. Fla.*, 2002 UT 3 at ¶¶ 22, 24, 40 P.3d 599.

¶ 19 Here, the Bonellis' refusal to participate in the underlying litigation was not inconsistent with an intent to arbitrate. Indeed, as the district court aptly observed, their refusal demonstrates just the contrary. By declining to answer Cedar Surgery's complaint or otherwise respond to the litigation, the Bonellis were, in effect, refusing to acknowledge Cedar Surgery's efforts to circumvent the arbitration process with which it had contractually agreed to abide. Ideally, the Bonellis would have raised the contractual arbitration clause in an answer to Cedar Surgery's complaint and then brought a motion to compel arbitration, rather than simply ignoring the district court proceedings altogether. However, we do not find that such failure evidences an intent on the part of the Bonellis to waive their right to arbitration and pursue redress through litigation. *See Cent. Fla.*, 2002 UT 3 at ¶ 27, 40 P.3d 599.

¶ 20 Accordingly, because the Bonellis did not participate in the underlying litigation, Cedar Surgery has failed to establish the first prong of the *Chandler* waiver test. Given this failure, we need not consider whether Cedar Surgery was prejudiced by the Bonellis' delay in asserting their arbitration right under *Chandler's* second prong. *See Chandler*, 833 P.2d at 360. We conclude that the Bonellis did not waive their right to arbitrate their dispute with Cedar Surgery.

## CONCLUSION

¶ 21 We need not decide whether the district court's order was a final order because, regardless, this court has jurisdiction over this appeal. The plain language of rule 3 of

the Utah Rules of Appellate Procedure clearly states that timely filing of a notice of appeal is the only jurisdictional requirement implicated when filing a direct appeal. Because Cedar Surgery filed its petition for permission to appeal within thirty days of entry of the district court's order, even if the district court's order was final, this court properly has jurisdiction to hear Cedar Surgery's appeal.

¶ 22 Further, we reaffirm application of *Chandler's* participation standard even in cases where a party fails to participate in the underlying litigation and allows entry of default judgment against it before asserting its right to arbitrate. Because the Bonellis did not participate in the litigation prior to entry of default judgment, Cedar Surgery cannot establish that the Bonellis intended to waive their right to arbitrate the parties' dispute. Therefore, the district court did not abuse its discretion in setting aside the default judgment and compelling arbitration. Affirmed.

¶ 23 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.