2005 UT App 381

**SMILE INC. ASIA PTE. LTD., a Singapore limited liability company, Plaintiff and Appellee,**

v.

**BRITESMILE MANAGEMENT, INC., a Utah corporation; and BriteSmile, Inc., Defendants and Appellants.**

**BriteSmile Management, Inc., a Utah corporation, Counterclaim Plaintiff and Appellant,**

v.

**Smile Inc. Asia Pte. Ltd., a Singapore limited liability company, Counterclaim Defendant and Appellee.**

**No. 20040614–CA.**

Court of Appeals of Utah.

Sept. 9, 2005.

R. Stephen Marshall, Chad J. Pomeroy, and David W. Tufts, Durham Jones & Pinegar, Salt Lake City, for Appellants.

David M. Wahlquist, Merrill F. Nelson, and Karina Landward, Kirton & McConkie, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

BILLINGS, Presiding Judge:

¶1 Appellants and Defendants BriteSmile Management, Inc. and BriteSmile, Inc. (collectively BriteSmile) challenge the trial court's denial of their motion to compel arbitration and stay litigation. Specifically, BriteSmile asserts the trial court erred by ruling that (1) it substantially participated in the present litigation in a manner inconsistent with an intent to arbitrate and (2) Appellee and Plaintiff Smile Inc. Asia Pte. Ltd. (Smile Asia) would suffer prejudice if compelled to arbitrate its claims. We affirm.

## BACKGROUND

¶2 On February 6, 1998, the parties entered into a distributor agreement (the Agreement) whereby BriteSmile appointed Smile Asia as its exclusive agent for the sales, use, and distribution of BriteSmile's equipment, reagents, and laser-aided teeth-whitening products in Southeast Asia. The Agreement contained an arbitration clause, which provided, in relevant part, that "[t]he parties hereby agree to waive trial by jury or by judge and resolve any dispute arising between [them] with respect to matters set forth in this Exclusivity Agreement by arbitration."

¶ 3 On April 23, 2002, Smile Asia filed a complaint against BriteSmile for, inter alia, breach of contract, fraud, and unjust enrichment. On May 30, 2002, BriteSmile answered the complaint and raised as the eighteenth defense of its nineteen defenses that the dispute is subject to mandatory binding arbitration pursuant to the Agreement and Utah Code section 78–31a–3. *See* Utah Code Ann. § 78–31a–3 (1998). BriteSmile also moved to dismiss Smile Asia's claims for fraud and unjust enrichment. In its answer, BriteSmile counterclaimed for breach of contract and the implied covenant of good faith and fair dealing. BriteSmile did not mention the arbitration clause in its counterclaim, motion to dismiss, memorandum in support of its motion, or reply memorandum.

¶ 4 Pursuant to Utah Rule of Civil Procedure 26(f), counsel for both parties participated in an attorney planning meeting in June 2002 and jointly filed the initial scheduling order with the court on July 16, 2002. The parties exchanged their first requests for discovery in July 2002. BriteSmile's discovery request consisted of thirty-five interrogatories and twenty-seven requests for production of documents.

¶ 5 In August 2002, BriteSmile served its answers to Smile Asia's first set of requests for admission but did not respond to Smile Asia's interrogatories and requests for production of documents. In February 2003, Smile Asia responded to BriteSmile's discovery requests.

¶ 6 On September 4, 2002, the trial court held a hearing on BriteSmile's motion to dismiss. The court denied BriteSmile's motion as to the unjust enrichment claim but granted its motion as to the fraud claims. However, the court permitted Smile Asia thirty days to amend its complaint.

¶ 7 Smile Asia timely filed an amended complaint. BriteSmile filed a second motion to dismiss Smile Asia's fraud claim for failure to plead with particularity. BriteSmile again did not mention the arbitration clause in its motion, memorandum in support, or reply memorandum.

¶ 8 On February 19, 2003, the parties jointly filed a revised case scheduling order. In April 2003, Smile Asia filed a motion to compel discovery and for sanctions. The exhibits attached to Smile Asia's motion included correspondence between the parties that detailed BriteSmile's failure to respond to Smile Asia's discovery requests and BriteSmile's request for additional time to comply. There is nothing in the correspondence to indicate that BriteSmile's failure to respond to discovery was due to a desire to arbitrate.

¶ 9 On May 5, 2003, the parties jointly filed a second revised case scheduling order. On June 10, 2003, BriteSmile submitted amended answers to Smile Asia's first set of requests for admission.

¶ 10 On June 11, 2003, the court held a hearing on BriteSmile's second motion to dismiss and Smile Asia's motion to compel discovery. The court denied the motion to dismiss, granted the motion to compel discovery, and ordered BriteSmile to respond to the request for production within ten days and to respond to the interrogatories within fourteen days. The court also granted Smile Asia's request for attorney fees incurred in preparing the motion to compel discovery and ordered that a supplemental affidavit of attorney fees be submitted. On June 26, 2003, BriteSmile filed a five-page objection to Smile Asia's updated affidavit. In late July, the court awarded $1330.00 in attorney fees to Smile Asia.

¶ 11 On June 24, 2003, BriteSmile responded in part to Smile Asia's interrogatories and request for production of documents. However, on July 12, 2003, both parties participated in a telephone conference with the court, initiated by Smile Asia, to address BriteSmile's failure to respond in full to Smile Asia's discovery requests. BriteSmile indicated that it was physically unable to produce all of the documents requested by Smile Asia because it was in the midst of a warehouse move. The court granted BriteSmile additional time to produce the documents.

¶ 12 On July 11, 2003, the parties again jointly filed an amended case scheduling order. The parties then jointly filed a stipulation governing the disclosure of confidential and proprietary information and an accompa-

nying order, which the court reviewed and signed on July 21, 2003.

¶ 13 On July 28, 2003, BriteSmile filed an answer to Smile Asia's amended complaint and again raised as the eighteenth defense of its nineteen defenses that the dispute is subject to mandatory binding arbitration pursuant to the Agreement and Utah Code section 78–31a–3. *See* Utah Code Ann. § 78–31a–3.

¶ 14 In August 2003, BriteSmile served a second set of interrogatories and request for production of documents and a first set of requests for admission to Smile Asia. BriteSmile then sent a fifteen-page letter detailing why it believed that Smile Asia's response to BriteSmile's first set of discovery requests was insufficient. In September and October, Smile Asia again responded to BriteSmile's discovery requests.

¶ 15 On February 4, 2004, the parties filed a joint motion regarding BriteSmile's production of documents, which the court reviewed and signed. Later in February and early March, Smile Asia took the depositions of five witnesses. BriteSmile took four days of depositions of Smile Asia's principals who traveled from Singapore to Salt Lake City.

¶ 16 On March 9, 2004, BriteSmile filed a motion for a protective order requesting protection regarding the production of its accounting information in digital form. The motion was accompanied by a five-page memorandum and various exhibits that detailed the lengthy correspondence between the parties regarding discovery issues.

¶ 17 On March 10, 2004, the parties jointly filed the final case scheduling order. The order stated that factual discovery would be completed by August 31, 2004; expert discovery by December 31, 2004; and the cutoff date for dispositive motions was January 31, 2005.

¶ 18 On March 26, 2004, Smile Asia filed a motion to compel production of electronic documents. On April 19, 2004, BriteSmile filed a memorandum in opposition to Smile Asia's motion and a reply memorandum in support of its motion for a protective order. BriteSmile's filing included twelve pages of legal argument and thirteen exhibits, which again detailed the ongoing discovery issues

between the parties. On May 3, 2004, Smile Asia filed its reply in support of its motion to compel production. However, before the court ruled on the pending discovery motions, BriteSmile filed a motion to compel arbitration and stay litigation on May 24, 2004.

¶ 19 On June 14, 2004, the court heard oral argument on the parties' pending discovery motions and on BriteSmile's motion to compel arbitration. In a carefully written ruling, the court denied BriteSmile's motion to compel arbitration and stay litigation because it found that BriteSmile had waived its right to arbitrate. BriteSmile appeals.

## ISSUE AND STANDARD OF REVIEW

■■■ ¶ 20 Determining whether a party waived its contractual right to arbitrate includes mixed questions of law and fact. *See Cedar Surgery Ctr., L.L.C. v. Bonelli,* 2004 UT 58, ¶ 6, 96 P.3d 911. In particular, "whether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Pledger v. Gillespie,* 1999 UT 54, ¶ 16, 982 P.2d 572.

## ANALYSIS

■■■ ¶ 21 BriteSmile argues the trial court erred by holding that it waived its right to arbitrate. In Utah, the law favors arbitration, and as such, there is a strong presumption against finding that a party waived its right to arbitration. *See Baker v. Stevens,* 2005 UT 32, ¶ 12, 114 P.3d 580; *Central Fla. Invs., Inc. v. Parkwest Assocs.,* 2002 UT 3, ¶ 24, 40 P.3d 599. "Consequently, a 'waiver of the right to arbitrate must be intentional,' and may be inferred 'only if the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate.'" *Baker,* 2005 UT 32 at ¶ 12, 114 P.3d 580 (quoting *Central Fla. Invs.,* 2002 UT 3 at ¶ 24, 40 P.3d 599). Because the issue of "[w]hether a party has waived the right to arbitrate is a factually intensive determination," we "infer the original intent of

the party asking for arbitration on a case-by-case basis." *Central Fla. Invs.*, 2002 UT 3 at ¶ 23, 40 P.3d 599; *see also Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 358 (Utah 1992) (stating that because finding that a party waived its right to arbitrate is a factual determination, "results vary, depending on the facts presented in a particular case").

¶ 22 In *Chandler*, the Utah Supreme Court set forth a two-part test for determining whether a party has waived its contractual right to arbitrate. Specifically, "the party alleging waiver must demonstrate (1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate; and (2) that this participation resulted in prejudice to the opposing party." *Cedar Surgery Ctr.*, 2004 UT 58 at ¶ 14, 96 P.3d 911 (discussing and applying the two-part test from *Chandler*). Both prongs of the *Chandler* test must be satisfied in order for a court to find that a party waived its right to arbitrate. *See Central Fla. Invs.*, 2002 UT 3 at ¶ 22, 40 P.3d 599.

¶ 23 BriteSmile asserts that the trial court erred by holding that it substantially participated in litigation in a manner inconsistent with an intent to arbitrate the underlying dispute. In particular, BriteSmile maintains that the trial court erroneously applied *Chandler* because it failed to recognize the subsequent rule announced in *Central Florida Investments*. We disagree.

¶ 24 In *Central Florida Investments*, the Utah Supreme Court held that "while [the defendant] participated in litigation, it did so unwillingly, and it did not convey an intent to disregard its right to arbitrate." *Id.* at ¶ 31. The court relied on the following facts for this conclusion: (1) the defendant sent a letter to the plaintiff three days after receiving the complaint to inform the plaintiff that the complaint was improper in light of the parties' agreement to arbitrate, *see id.* at ¶ 3; (2) the defendant also presented the letter to the trial court in its motion to dismiss and referenced the letter in its memorandum in support of its motion to dismiss, *see id.* at ¶ 30; (3) the defendant repeatedly mentioned its desire to arbitrate in its memorandum in

support of its motion to dismiss, *see id.*; and (4) in the defendant's counterclaim, arbitration was raised in the fourth cause of action as a reason to find against the plaintiff, *see id.* The Utah Supreme Court concluded that "when [the defendant] did participate in the litigation process, it did so while communicating an intent to arbitrate." *Id.* at ¶ 34.

¶ 25 BriteSmile argues that it is like the defendant in *Central Florida Investments* because it raised its right to arbitrate as an affirmative defense and was reluctant to participate in discovery. We disagree. The record demonstrates that BriteSmile only raised this right as the eighteenth defense of its nineteen defenses in its original answer and again, over a year later, in its answer to the amended complaint. The amended answer was substantially similar to the original answer and no new defenses were added. Other than these two occasions, there is nothing in the record to indicate that BriteSmile expressed, either to Smile Asia or the trial court, that it wished to arbitrate, until it filed the motion to compel arbitration more than two years after the original complaint was filed.

¶ 26 During those two years, BriteSmile substantially participated in litigation by (1) filing and arguing two motions to dismiss, (2) filing a counterclaim, (3) filing various memoranda in support of its motions or in opposition to Smile Asia's motions, (4) filing five joint scheduling orders, (5) filing a joint stipulation governing the disclosure of confidential documents, (6) filing a motion for a protective order for its digital accounting information, (7) participating in conference calls with the court, (8) taking part in attorney planning meetings, (9) serving several requests for discovery, (10) responding to some discovery requests, (11) taking and defending depositions of seven witnesses, and (12) engaging in correspondence with counsel for Smile Asia regarding ongoing discovery issues. In addition, there is nothing in the record to indicate that BriteSmile's reluctance to participate in discovery was due to a desire to arbitrate.

¶ 27 Moreover, unlike the defendant in *Central Florida Investments, Inc. v. Par-*

*kwest Associates,* 2002 UT 3, 40 P.3d 599, who waited only four months after the complaint was filed before it filed a motion to compel arbitration, *see id.* at ¶¶ 2, 9, BriteSmile waited *over two years* to file a motion to compel arbitration. In *Chandler v. Blue Cross Blue Shield of Utah,* 833 P.2d 356, 360 (Utah 1992), the Utah Supreme Court held that the record supported a finding that the defendant in that case "participated in the litigation to a point inconsistent with arbitration" after only five months of discovery and after filing an answer and cross-claim. The *Chandler* court concluded that "[t]hese actions clearly manifest an intent to proceed to trial." *Id.* Similarly, we agree with the trial court that BriteSmile "did not originally intend to have this matter arbitrated, but seriously contemplated it only after two years of litigation."

¶ 28 Furthermore, our supreme court stated in *Central Florida Investments:*

> Participation in discovery and other aspects of litigation that do not necessarily involve the court are factors we consider in trying to ascertain a party's intent or attitude toward its participation in litigation. Requests made of the court by the parties, however, have even greater weight. *We consider especially important whether the parties' requests of the court demonstrate an intent to pursue litigation or whether they demonstrate an intent to avoid litigation and a desire to be sent to arbitrate.* Accordingly, parties seeking to enforce arbitration should ensure that the court, not just the opposing party, is informed that arbitration is desired.

2002 UT 3 at ¶ 26, 40 P.3d 599 (emphasis added). BriteSmile's participation in discovery and the filing of its various motions "demonstrate an intent to pursue litigation" and do not evidence a desire to arbitrate. *Id.* BriteSmile did not "ensure" that the trial court knew of its desire to arbitrate. *Id.* In fact, at the hearing on BriteSmile's motion to compel arbitration, the trial court stated, "Why didn't [BriteSmile] push this before, or is there something in the file I've missed that they were pushing for arbitration?"

¶ 29 In addition, since briefing was completed in this case, our supreme court issued *Baker v. Stevens,* 2005 UT 32, 114 P.3d 580. In *Baker,* after receiving the complaint from the plaintiff, the defendants filed a motion to compel arbitration, which was denied by the trial court. *See id.* at ¶ 1. The defendants appealed the denial of that motion and the parties agreed to participate in discovery while the appeal was pending. *See id.* at ¶ 5. While the appeal was under advisement, one of the defendants filed a summary judgment motion, which the trial court granted and dismissed that defendant from the underlying case. *See id.* at ¶ 6. The plaintiff asserted that the dismissal rendered the appeal moot, but the supreme court disagreed and held that because the time for appealing the summary judgment motion had not yet run, the judgment was not final. *See id.* at ¶ 10. While the trial court had not made any findings regarding *Chandler's* two-part test, the supreme court stated that remanding for findings was unnecessary "because the docket ... unequivocally reveal[s] the very fact that we consider fatal to [the defendant's] efforts to compel arbitration: [the defendant] sought summary judgment in the district court." *Id.* at ¶ 14. Accordingly, the supreme court held, "[w]e have no doubt that filing a motion for summary judgment ... qualifies as substantial participation 'in the underlying litigation to a point inconsistent with the intent to arbitrate.' " *Id.* at ¶ 15 (quoting *Cedar Surgery Ctr., L.L.C. v. Bonelli,* 2004 UT 58, ¶ 14, 96 P.3d 911).

¶ 30 Similarly, we believe that filing two motions to dismiss, five joint scheduling orders, and a counterclaim "qualifies as substantial participation 'in the underlying litigation to a point inconsistent with the intent to arbitrate,' " *id.* (quoting *Cedar Surgery Ctr.,* 2004 UT 58 at ¶ 14, 96 P.3d 911), as these "requests of the court demonstrate an intent to pursue litigation," *Central Fla. Invs.,* 2002 UT 3 at ¶ 26, 40 P.3d 599. Accordingly, under these circumstances, we cannot say that merely raising arbitration as an affirmative defense, without more, is enough to preserve the right.[1] To hold otherwise would

---

1. Other jurisdictions have held that merely raising arbitration as a defense does not preclude a

finding of waiver. *See, e.g., Manos v. Geissler,* 321 F.Supp.2d 588, 595 (S.D.N.Y.2004) ("The

allow a party to raise arbitration as an affirmative defense and then actively participate in litigation of the dispute for several years before bringing a motion to compel arbitration. Thus, we hold that the first prong of *Chandler* has been met.

¶ 31 BriteSmile also argues that the trial court erred in finding that prejudice would occur if it were to compel Smile Asia to participate in arbitration. In particular, BriteSmile asserts that Smile Asia has failed to offer any evidence of prejudice and the trial court did not cite to any specific fact to support its conclusion of prejudice. We disagree.

¶ 32 Three Utah cases have addressed the prejudice prong of *Chandler. See Baker,* 2005 UT 32 at ¶ 16, 114 P.3d 580; *Pledger v. Gillespie,* 1999 UT 54, ¶¶ 22–23, 982 P.2d 572; *Chandler v. Blue Cross Blue Shield of Utah,* 833 P.2d 356, 360–61 (Utah 1992). The Utah Supreme Court has held that while mere delay in asserting a right to arbitration, without more, is not enough to demonstrate prejudice, "any real detriment is sufficient to support a finding of prejudice." *Chandler,* 833 P.2d at 360; *see also Pledger,* 1999 UT 54 at ¶ 19, 982 P.2d 572.

¶ 33 In *Chandler,* the Utah Supreme Court noted that while there is some disagreement as to what facts suffice to support a finding of prejudice,

> [c]ourts have recognized that prejudice can occur if a party gains an advantage in arbitration through participation in pre-trial procedures. Courts have also stated that prejudice exists when the party seeking arbitration is attempting to forum-shop after the judicial waters have been tested. In addition, prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of expenses that arbitration is designed to alleviate, such as the expense of preparing to argue important pretrial motions or the expense of conducting discovery procedures that are not available in arbitration.

833 P.2d at 359 (quotations, citations, alterations, and footnotes omitted). The *Chandler* court explained that because the defendant was able to participate in extensive discovery and to review discovery that had taken place prior to its entry into the case, it learned information that "could now be used in arbitration to the detriment of [the] plaintiffs." *Id.* at 361. In addition, the court noted that because of the "limited degree of discovery available in arbitration," the defendant's five-month delay in filing a motion to compel arbitration allowed it to learn information regarding a third-party's liability. *Id.*

¶ 34 In *Pledger,* the plaintiff argued that he was prejudiced by the delay between the time that the third-party defendant learned of the dispute and the time it filed a motion to compel arbitration. *See* 1999 UT 54 at ¶ 22, 982 P.2d 572. The court again reiterated that "mere delay is an insufficient basis for waiver of a right to arbitration," noting that this is especially so where "much of the

---

mere fact that defendants included the existence of the Arbitration Clause as an affirmative defense in their Answer does not require [the court to grant the motion to compel arbitration]."); *Sobremonte v. Superior Court,* 61 Cal.App.4th 980, 72 Cal.Rptr.2d 43, 54 (1998) ("Mere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute."); *Davis v. Continental Airlines,* 59 Cal.App.4th 205, 216, 69 Cal.Rptr.2d 79 (1997) ("[A] defendant may not merely assert failure to arbitrate as an affirmative defense but must seek a stay and demand arbitration."); *Board of Educ. Taos Mun. Sch. v. Architects,* 103 N.M. 462, 709 P.2d 184, 187 (1985) ("Mere mention of such a right [to arbitrate] as an affirmative defense in the answer to a

complaint does suffice to keep the right alive. The right expires, however, when the party asserting it takes significant action inconsistent with the right. Waiver of the right may be inferred from any decision to take advantage of the judicial system, whether through discovery or direct invocation of the court's discretionary power, or both."); *De Sapio v. Kohlmeyer,* 35 N.Y.2d 402, 362 N.Y.S.2d 843, 321 N.E.2d 770, 772–73 (1974) (holding that despite the fact that the defendant raised the right to arbitration in his answer, the defendant waived the right by taking the plaintiff's deposition because "utilization of judicial discovery procedure is . . . an affirmative acceptance of the judicial forum" and "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.").

[third-party defendant's] delay in seeking arbitration resulted from [the plaintiff's]" conduct. *Id.* The court concluded that the plaintiff had not demonstrated "he [would] be negatively impacted by arbitrating the dispute" nor had he "established that he incurred significant expenses in the district court litigation that would not have been incurred in arbitration." *Id.* at ¶ 23, 982 P.2d 572. *Pledger* is distinguishable because the third-party defendant in that case did not participate in the underlying litigation and the delay resulted from the plaintiff's conduct. Here, BriteSmile actively participated in litigation prior to filing a motion to compel arbitration and the delay was not due to Smile Asia's conduct.

¶ 35 In *Baker v. Stevens*, 2005 UT 32, 114 P.3d 580, the supreme court held that because the plaintiff incurred expenses that she would have avoided had the defendant "confined his efforts to arbitration," she suffered prejudice. *Id.* at ¶ 16. Similarly, Smile Asia would suffer prejudice if compelled to arbitrate its claims after two years of discovery and numerous motions filed and argued by both parties. Smile Asia could have avoided incurring expenses associated with two years of active litigation.

¶ 36 Thus, we cannot say that the trial court committed clear error by holding that Smile Asia would suffer prejudice if forced to arbitrate its claims at this stage in the litigation. *See Pledger*, 1999 UT 54 at ¶ 16, 982 P.2d 572. After reviewing the record that includes the significant and extensive discovery Smile Asia provided to BriteSmile (over 3200 pages) and the various motions filed by BriteSmile (two motions to dismiss and a motion for a protective order), in conjunction with the "limited degree of discovery available in arbitration," *Chandler*, 833 P.2d at 361, and "the expense of preparing to argue important pretrial motions," *id.* at 359, we conclude that prejudice is evident.

¶ 37 Furthermore, we agree with the trial court that the two years of experience that BriteSmile has had in this case, including significant motion practice, has effectively allowed it to test the judicial waters. *See id.*

BriteSmile (1) was unsuccessful in its two motions to dismiss, (2) was unsuccessful in resisting Smile Asia's discovery requests, (3) was ordered to pay Smile Asia's attorney fees incurred in preparing its motion to compel discovery, (4) was chastised by the trial court on more than one occasion for failing to respond to discovery, and (5) filed a motion for a protective order for their electronic accounting information.[2] Accordingly, we hold that granting the motion to compel arbitration at this late stage, after BriteSmile has tested the judicial waters, would be no different than allowing BriteSmile to forum-shop.

### CONCLUSION

¶ 38 We hold that the trial court did not err in determining that BriteSmile waived its right to arbitration. Accordingly, we affirm.

¶ 39 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.

---

2. In addition, three days before BriteSmile filed its Notice of Appeal, the trial court had ordered it to produce the electronic accounting information.