2016 UT App 92

# THE UTAH COURT OF APPEALS

JASON NELSON AND GALEN LEITH,
Appellees,
*v.*
LIBERTY ACQUISITIONS SERVICING LLC, LIBERTY ACQUISITIONS I
LLC – JEFFERY W. BUSCH AND MARK CANNON, RYAN BOLANDER,
SCOTT SKEEN, AND BRIAN R. BECKER,
Appellants.

Opinion
No. 20141004-CA
Filed May 5, 2016

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 130908649

Ronald F. Price, Attorney for Appellants

Lester A. Perry, Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE GREGORY K. ORME and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

CHRISTIANSEN, Judge:

¶1     After the cessation of a debt collection company's
litigation efforts against them, two individuals brought suit
against that company for violations of federal and state statutes
governing debt collection practices. The company sought to
enforce arbitration clauses in the underlying credit card
agreements allegedly entered into by the individuals and the

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

company's predecessor-in-interest. The district court ruled that the company had waived the right to enforce the arbitration clauses by filing and pursuing the original debt collection actions. The company appeals from that ruling.

BACKGROUND

¶2    Liberty Acquisitions Servicing LLC is a company engaged in the collection of consumer debts. Liberty Acquisitions bought a tranche of overdue Best Buy credit card accounts issued by HSBC Bank Nevada NA. Among these were accounts opened in the names of Jason Nelson and Galen Leith. In January 2013, Liberty Acquisitions filed complaints seeking to collect on both the Nelson and Leith accounts (the Collection Actions).

¶3    Nelson moved for summary judgment on statute of limitations grounds. He argued that, pursuant to Utah's statutory scheme, California's statute of limitations governed the case because the account documents stated that payment was to be sent to California. The California statute of limitations is four years. The district court agreed that the four-year statute of limitations applied and that collection on the Nelson account was therefore time-barred. Liberty Acquisitions' appeal of that ruling to the Utah Supreme Court is currently pending.

¶4    In the Leith action, the district court entered a default judgment in favor of Liberty Acquisitions. Leith moved to set aside that default judgment, and argued that because Liberty Acquisitions had not provided a copy of the credit card agreement with his signature, he believed the account might not be his.[2] Leith and Liberty Acquisitions filed a joint motion to set aside the default judgment and to dismiss the Leith action.

---

2. Leith did not explicitly claim that the account was not his.

Accordingly, the district court dismissed the Leith action with prejudice.

¶5   Nelson and Leith (Plaintiffs) then filed a complaint against Liberty Acquisitions from which this appeal is taken (the 2014 Action). The complaint also named as defendants Brian R. Becker, Ryan Bolander, and Scott Skeen, three employees of Liberty Acquisitions. We refer to the company, together with its employees, as the LA Defendants. The complaint alleged that the LA Defendants violated the federal Fair Debt Collection Practices Act (the FDCPA) and the Utah Consumer Sales Practices Act (the UCSPA) by filing the Collection Actions despite the expiry of the time bar. Plaintiffs also sought to bring these claims as a class action on behalf of an unspecified number of similarly situated individuals. Leith further asserted an individual claim against the LA Defendants for violating the FDCPA and the UCSPA by serving a writ of garnishment on Leith's employer eleven or twelve days after the court dismissed the Leith action with prejudice.[3]

¶6   The LA Defendants moved to stay the 2014 Action pending the resolution of Nelson's statute-of-limitations case by the Utah Supreme Court. The district court denied that motion. The LA Defendants then filed a motion to compel arbitration and to stay the proceedings pending the outcome of arbitration. The LA Defendants pointed to the account agreements, which allowed either party to resolve disputes by arbitration:

> Any claim, dispute, or controversy between you and us (whether based upon contract; tort, intentional or otherwise; constitution; statute;

---

3. The complaint concedes that Liberty Acquisitions "released the garnishment upon being informed that it was served on Mr. Leith's employer."

common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, and except as provided below, the validity, enforceability, or scope of this arbitration provision, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

The account agreements further provided that the Federal Arbitration Act would govern any arbitration proceedings.

¶7     Plaintiffs opposed the motion to compel arbitration, arguing among other things that Leith was not bound by the agreement because he had not signed the agreement; that Liberty Acquisitions was not the successor-in-interest or assignee of HSBC; that Becker, Bolander, and Skeen were not employees of Liberty Acquisitions; that Plaintiffs' claims did not fall within the scope of the arbitration provision; and that Liberty Acquisitions waived the right to arbitration by forgoing arbitration and instead filing and pursuing the Collection Actions in court.

¶8     After a hearing, the district court denied the motion to compel. It noted that the LA Defendants had "filed two lawsuits against [Plaintiffs] to collect monies allegedly owed on HSBC credit cards" and that the LA Defendants had "substantially pursued litigation of the two lawsuits." The court ruled that, "[h]aving chosen to pursue litigation in those collection actions, [the LA Defendants] waived the right to assert the arbitration

provision against the plaintiffs in the present case." The LA Defendants appeal.

ISSUE AND STANDARD OF REVIEW

¶9    The LA Defendants contend that waiver is the intentional relinquishment of a known right, and thus that any waiver of the right to arbitrate in the Collection Actions could not be valid as to rights arising in this subsequent lawsuit. "Whether a contractual right of arbitration has been waived presents mixed questions of law and fact[.]" *Central Florida Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 20, 40 P.3d 599 (existing brackets, citation, and internal quotation marks omitted). Whether the district court employed the proper standard for determining whether a right to arbitrate has been waived is a legal question, and we review the court's ruling for correctness. *Id.* But where the actions or events allegedly constituting waiver are contested, we review the district court's findings of fact for an abuse of discretion. *Id.*

ANALYSIS

I. Waiver of a Known Right

¶10    The LA Defendants first contend that any waiver of the right to arbitrate the Collection Actions cannot constitute a waiver of the right to arbitrate the 2014 Action because the LA Defendants "could not intentionally and knowingly waive their right to arbitrate claims that did not exist, and which were not raised, asserted or at issue in the prior collection actions."

¶11    The Utah Supreme Court "has recognized the important public policy behind enforcing arbitration agreements as an approved, practical, and inexpensive means of settling disputes and easing court congestion." *Cedar Surgery Ctr., LLC v. Bonelli*,

2004 UT 58, ¶ 14, 96 P.3d 911 (citation and internal quotation marks omitted). The supreme court has "also acknowledged that there is a strong presumption against waiver of the right to arbitrate." *Id.* (citation and internal quotation marks omitted). Consequently, a court may only infer such waiver where "the facts demonstrate that the party seeking to enforce arbitration intended to disregard its right to arbitrate." *Id.* (citation and internal quotation marks omitted). To establish waiver of the right to arbitrate, a party must show "(1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate[] and (2) that this participation resulted in prejudice to the opposing party." *Id.*

¶12    The LA Defendants assert that the district court failed to examine whether the LA Defendants participated "in the underlying litigation." In their view, the district court "based its ruling entirely on [the LA Defendants'] conduct in other, prior lawsuits"—namely, the Collection Actions. Central to the LA Defendants' claim is their apparent assertion that the Collection Actions were not "underlying litigation" to the 2014 Action. However, the LA Defendants provide no authority interpreting the term "underlying litigation." *See Brigham v. Moon Lake Elec. Ass'n*, 470 P.2d 393, 397 (Utah 1970) ("On appeal, the burden is upon the appellant to convince us that the trial court committed error . . . ."). Rather, they simply assert that Plaintiffs' "claims in [the 2014 Action] did not exist, and were not raised, asserted or at issue in the prior [Collection Actions]."

¶13    We do not agree with the LA Defendants that the claims raised in the 2014 Action did not exist at the time of the Collection Actions. The Collection Actions originated when Liberty Acquisitions sought to recover money it believed Nelson and Leith owed. Liberty Acquisitions elected to litigate the claims, thus waiving its contractual right to arbitrate them. In response to the suit against him, Nelson claimed that Liberty

Acquisitions' claim was time-barred by the California statute of limitations. The district court agreed and granted summary judgment to Nelson. Liberty Acquisitions then stipulated to the dismissal of its case against Leith with prejudice, apparently because the Leith action suffered from the same infirmity. The time-bar was therefore central to the Collection Actions, and Liberty Acquisitions waived its right to arbitrate those cases. Nelson and Leith then filed the 2014 Action, in which they argued that Liberty Acquisitions and its employees had violated federal and state law by suing Nelson and Leith on time-barred claims. Thus, in both the Collection Actions and the 2014 Action, the applicability and effect of the time-bar was at issue. Indeed, the basis of the 2014 Action is the allegedly wrongful conduct of the LA Defendants in filing the Collection Actions. It follows that if the LA Defendants, as Plaintiffs allege in the 2014 Action, filed time-barred collection actions, the FDCPA and UCSPA violation claims did not just exist at the time of the Collection Actions but were in fact created by the filing of the Collection Actions.[4]

---

4. Under these facts, it is also difficult to understand how, for purposes of the 2014 Action, the LA Defendants can assert rights granted by the arbitration provision of the credit card agreements while further asserting that the earlier suits based on the alleged breach of those agreements were not related to the 2014 Action. The arbitration provision is part of the credit card agreements Nelson and (allegedly) Leith each signed with Liberty Acquisitions' predecessor-in-interest. The arbitration provision stated that it applied to suits "arising from or relating to this Agreement or the relationships which result from this Agreement." Thus, in order for the arbitration provision to apply to this case, the LA Defendants needed to establish that the 2014 Action arose from or related to the credit card agreements. The LA Defendants' position must therefore be that the 2014 Action is related to the credit card agreements for purposes of invoking the arbitration provision. However, to avoid waiver, the LA

(continued…)

¶14 The LA Defendants have also failed to show that the Collection Actions were not "underlying litigation" to the 2014 Action. *See Cedar Surgery Ctr.*, 2004 UT 58, ¶ 14. This contention appears to present an issue of first impression in Utah. The LA Defendants reference a number of similar trial court cases where courts have determined that the right to arbitrate a later claim was not waived by litigating an earlier claim. *See, e.g., Cage v. CACH, LLC*, No. C13-01741RSL, 2014 WL 2170431, at *1 (W.D. Wash. May 22, 2014) ("Bringing a lawsuit for debt collection may result in defendants' waiver of arbitration for that case, but it does not . . . bar defendants from invoking arbitration in all future *separate* causes of action that plaintiffs assert against them." (emphasis added)); *see also James v. Portfolio Recovery Assocs., LLC*, No. 14-cv-03889-RMW, 2015 WL 720195, at *5 (N.D. Cal. Feb. 20, 2015) (same); *Schwartz v. CACH, LLC*, No. 13-12644-FDS, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) ("The collection actions, which CACH brought against plaintiff, are *distinct* from the claims brought by plaintiff here. CACH did not, therefore, waive its right to arbitrate the present dispute." (emphasis added)); *Funderburke v. Midland Funding, LLC*, No. 12-2221-JAR/DJW, 2013 WL 394198, at *7 (D. Kan. Feb. 1, 2013) ("The specific claims at issue in this case were not litigated in that action and so Midland's litigation enforcing Plaintiff's debt does not support a finding of waiver here."). In each of these cases, the court stated that the claim(s) for which arbitration was sought were separate or distinct from the claim(s) previously litigated.

---

(…continued)
Defendants' position must also be that the Collection Actions predicated on alleged violations of those credit card agreements did not constitute "underlying litigation" to the 2014 Action. Where the central issue of the later case is based on the dispositive issue of the earlier case, these positions appear contradictory.

¶15 However, under Utah law, the relevant inquiry is not simply whether the later claim was separate or distinct from the earlier claim but rather whether the later claim was part of the "underlying litigation." *See Cedar Surgery Ctr.*, 2004 UT 58, ¶ 14. The cases cited above therefore do not shed light on whether the district court here erred by determining that the "underlying cases" to the 2014 Action were the Collection Actions "brought on the same account agreement with the same arbitration clause in it."

¶16 Utah courts have often used the term "underlying litigation" in other contexts to refer to earlier, but related, cases that concerned claims and parties not before the court. For example, in the context of legal malpractice actions, Utah courts have repeatedly used the term to mean the earlier suit upon which the later claim was based. *See, e.g., Crestwood Cove Apts. Bus. Trust v. Turner*, 2007 UT 48, ¶ 13, 164 P.3d 1247 (noting that under certain circumstances, "the abandonment doctrine provides that a client forfeits any legal malpractice claims arising from an attorney's alleged mishandling of litigation when the client settles the *underlying litigation* before final judicial review" (emphasis added)); *Harline v. Barker*, 912 P.2d 433, 441 (Utah 1996). The Utah Supreme Court has also used the term in an action by a public defender association against a judge to refer to a post-conviction relief case litigated before that judge. *See Salt Lake Legal Defender Ass'n v. Uno*, 932 P.2d 589, 591 (Utah 1997). And the Utah Supreme Court has used the term in a spoliation case brought against a third party to mean the case in which the spoliated evidence would have been introduced. *See Hills v. United Parcel Serv., Inc.*, 2010 UT 39, ¶ 23, 232 P.3d 1049.

¶17 In their reply brief, the LA Defendants assert that "the United States District Court, Southern District of Indiana, applying Utah law, recently rejected Nelson/Leith's exact argument." *See Cox v. CA Holding Inc.*, No. 1:13-cv-01754-JMS-TAB, 2015 WL 631393 (S.D. Ind. Feb. 13, 2015). There, several

plaintiffs opened credit card accounts with HSBC Nevada. *Id.* at *2–*5. One of the accounts was governed by Utah law. *Id.* at *13. The defendants acquired the account and filed a collection action against the plaintiff in state court, thus waiving the right to arbitrate the claim. *Id.* The plaintiff later filed suit against the defendants, alleging several violations of the FDCPA. *Id.* at *6. The defendants filed a motion to compel arbitration, which the plaintiff opposed. *Id.* at *1. The trial court noted that the plaintiffs "ha[d] not cited any case law indicating that a party to an arbitration provision waives the provision by initiating a lawsuit involving different claims than the claims it seeks to arbitrate." *Id.* at *15. The trial court therefore determined that the defendants were entitled to arbitrate claims relating to that account. *Id.* at *16.

¶18    The key distinction between *Cox* and the case at bar is whether the earlier claims (upon which the right to arbitrate was waived) are properly part of the "underlying litigation." *See Cedar Surgery Ctr., LLC v. Bonelli*, 2004 UT 58, ¶ 14, 96 P.3d 911 (explaining that, to infer waiver of the right to arbitrate, the court must determine that "the party seeking arbitration substantially participated in the underlying litigation"). The district court in the case before us implicitly determined that the Collection Actions were part of the "underlying litigation" when it ruled that waiver in the Collection Actions amounted to waiver in the 2014 Action. In contrast, the *Cox* court did not analyze at all whether the claims before it stemmed from the "underlying litigation." Rather, it simply began with the proposition that the claims were "different" than the earlier claims.[5] *Cox*, 2015 WL

---

5. This omission may be the result of the nature of the claims raised. We note that the filing of the Collection Actions was central to the 2014 Action because the 2014 Action alleged that the LA Defendants had wrongfully filed time-barred debt collection suits. In contrast, the FDCPA causes of action before

(continued…)

631393, at \*15. In essence, the *Cox* court equated "underlying litigation" with litigation of the same claim without considering whether Utah law mandated that result. As we have explained, we are not aware of any Utah case or statute that has so limited the term "underlying litigation." And the Utah cases discussed above, *supra* ¶ 16, suggest just the opposite. We therefore agree with *Cox* only to the extent that, where a court determines that new claims are not based on the underlying litigation, a waiver of the right to arbitrate the prior claims does not effect a waiver as to the new claims.

¶19 Utah is not the only jurisdiction to weigh the relationship of the earlier claims to the later claims rather than follow a bright-line "different claims" analysis. For example, a somewhat similar situation confronted the Florida Fourth District Court of Appeal in *Owens & Minor Medical, Inc. v. Innovative Marketing & Distribution Services, Inc.*, 711 So. 2d 176 (Fla. Dist. Ct. App. 1998). There, the appellant had sued the appellee for breach of a contract that contained an arbitration clause. *Id.* at 177. The appellant later amended its complaint and sought discovery. *Id.* The appellee eventually filed an answer, alleging as both an affirmative defense and as a counterclaim that the contract had been fraudulently induced. *Id.* The appellant then filed a motion to compel arbitration, which the district court denied. *Id.* On appeal, the appellant argued "that it did not participate in the litigation in relation to the counterclaim, so that claim should [have been] subject to arbitration." *Id.* The Florida Court of Appeal noted that "[t]he matters raised in the counterclaim are

---

(…continued)

the *Cox* court were less specifically tied to the earlier cases there because those causes alleged that the defendants had not obtained a debt collection license as mandated by Indiana law, had failed to register as mandated by Indiana law, and did not actually own the debts in question.

intertwined with issues raised in the amended complaint." *Id.* Accordingly, the court rejected the appellant's argument on the ground that "the counterclaim [did] not involve issues separate and distinct from those raised in [the appellant's] amended complaint." *Id.*

¶20     To show that a defendant's waiver of the right to arbitrate in an earlier case extends to claims raised later, the party opposing arbitration must show "(1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate[] and (2) that this participation resulted in prejudice to the opposing party." *See Cedar Surgery Ctr.*, 2004 UT 58, ¶ 14. The district court here determined that this burden was satisfied due to the Collection Actions. The LA Defendants have not demonstrated on appeal that the Collection Actions did not constitute "underlying litigation" to the 2014 Action. We therefore conclude that the LA Defendants have failed to show error in the district court's ruling that Liberty Acquisitions' election to pursue litigation in the Collection Actions constituted waiver of its right to arbitration in the 2014 Action. *See Brigham v. Moon Lake Elec. Ass'n*, 470 P.2d 393, 397 (Utah 1970) ("On appeal, the burden is upon the appellant to convince us that the trial court committed error . . . .").

## II. Other Issues

¶21     In order to preserve an issue for appeal, the issue must be presented to the district court in such a way that the district has an opportunity to rule on the issue. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. "Issues that are not raised at trial are usually deemed waived." *Id.* For this reason, the Utah Rules of Appellate Procedure require that an appellant's opening brief contain a statement of the issues presented for review, including for each issue the standard of appellate review and either a citation demonstrating preservation or a statement of

grounds to seek review of an unpreserved issue. *See* Utah R. App. P. 24(a)(5).

¶22 The LA Defendants contend that Plaintiffs "have not suffered the requisite prejudice necessary to find a waiver of the right to arbitrate." The LA Defendants do not identify this contention in their statement of issues, do not set forth a standard of review for it, and do not provide a citation to the record showing where this argument was preserved. Although we are under no obligation to do so, we have reviewed the record and are unable to see where the issue of prejudice was brought to the district court's attention. *See Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762. We consequently deem this issue unpreserved and decline to address it further.

¶23 Becker, Bolander, and Skeen (the Individual Defendants) contend that they did not waive their individual rights to arbitrate the 2014 Action by appearing as Liberty Acquisitions' counsel in the Collection Actions. According to the LA Defendants' opening brief, this contention was preserved in the LA Defendants' memorandum in support of the motion to compel arbitration or in their reply memorandum in support of the same. However, the initial memorandum did not raise any argument resembling this contention. And the reply memorandum only mentions, with respect to the Individual Defendants, that "there is no question that the arbitration clause applies to them as well." Accordingly, while the issue of whether the Individual Defendants had a right to arbitrate was preserved for appeal, the issue actually raised on appeal—whether the Individual Defendants then *waived* that right—was not before the district court. Accordingly, we decline to address it further.

CONCLUSION

¶24 The LA Defendants have not shown error in the conclusion that the Collection Actions were "underlying

litigation" to the 2014 Action. They have therefore failed to carry their burden of demonstrating error in the district court's ruling that their participation in the Collection Actions waived their right to arbitrate the 2014 Action. The LA Defendants' remaining contentions were not raised below and were consequently not preserved for appeal; we therefore decline to address them.

¶25    Affirmed.

_____